# UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY
M.L. KING, JR. FEDERAL BUILDING
50 WALNUT ST., 3RD FLOOR
NEWARK, NEW JERSEY 07102

DONALD H. STECKROTH  (973) 645-4693
BANKRUPTCY JUDGE  Fax: (973) 645-2606

**NOT FOR PUBLICATION**

```
FILED
JAMES J. WALDRON, CLERK

APRIL 21, 2010

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: s/ Ronnie Plasner, DEPUTY
```

April 21, 2010

## LETTER OPINION
## ORIGINAL FILED WITH THE CLERK OF THE COURT

Bielan, Miklos & Makrogiannis, P.C.
Sotiria Makrogiannis, Esq.
420 Broadway
Bayonne, NJ 07002
*Counsel for Plaintiff*

Peter J. Byrne, Esq. Attorney at Law
J. Peter Byrne, Esq.
415-60th Street
West New York, NJ 07093
*Counsel for Debtor/Defendant*

Re:   **Bielan, Miklos & Makrogiannis a/k/a BMMD v. Estrella M. Vasquez**
      **Adversary Proceeding No. 08-1409 (DHS)**

Page 2
April 21, 2010

Dear Counsel:

Before the Court is an adversary proceeding initiated by the law firm of Bielan, Miklos & Makrogiannis, P.C. ("Plaintiff") objecting to the discharge of the debts of the chapter 7 debtor, Estrella M. Vasquez ("Debtor"), under §§ 727(a)(2)(A), 727(a)(3), and 727(a)(4) of the Bankruptcy Code. The Plaintiff filed its adversary complaint on April 11, 2008 and the Debtor filed her answer to the complaint on May 5, 2008. (Pl.'s Trial Br. 1).

On October 1, 2008, Eric R. Perkins, a chapter 7 trustee ("Trustee"), filed a complaint seeking to avoid a transfer of the Debtor's property under §§ 548(a)(1)(A) and (B) of the Bankruptcy Code (*Id.* at 1-2). The complaints filed by the Plaintiff and the Trustee were consolidated in accordance with a consent order entered on November 14, 2008. (*Id.* at 2). The Debtor filed an answer to the Trustee's complaint on January 15, 2009. (*Id.*). In November 2009, the Debtor's answers and defenses were struck due to her failure to appear at hearings and cooperate with the Plaintiff's counsel. The Plaintiff was granted ten days to supplement the record and this Court received the Plaintiff's supplementary documents on November 23, 2009.

The relevant facts are not in dispute. During their marriage, the Debtor and her husband, Eugenio Vasquez, resided at 7412 4th Avenue in North Bergen, New Jersey ("Property"). Title to the Property was held by Luis Ramos, a friend of Eugenio Vasquez. (Dep. of Estrella M. Vasquez ("Def.'s Dep."), 16:18-25, 17:1-3, 19:3-7, Sept. 11, 2008). The Debtor and her husband divorced in November 2006[1] and at that time, the Debtor owed the Plaintiff, her counsel throughout the divorce proceedings, $20,658.58 in counsel fees.[2] (Pl.'s Adv. Compl., at ¶ 3 (Pl.'s Trial Br., Ex. 2)). In addition, in accordance with the judgment of divorce, the Property was transferred to the Debtor on the condition that she (1) pay off the existing mortgage under Luis Ramos's name and (2) find another person with whom she could share ownership of the Property so that financing could be obtained. (Am. J. of Divorce, Jan. 31, 2007, at ¶ 15 (Pl.'s Trial Br., Ex. 3)).

By deed dated December 16, 2006, the Debtor received a 60% interest in the Property from Luis Ramos, and her sister, Rachel Valvidia, received a 40% interest. (Pl.'s Trial Br. 3). The Debtor understood at that time that she and her sister had received ownership interests in the Property and that the Property was "in her name." (Def.'s Dep., 34:24-25, 35:1-17, 36:1-6, 66:10-14).

The Debtor and her sister were unable to obtain financing on their own and the Debtor turned to her then-boyfriend, Radames Dumenigo ("Dumenigo"). (*Id.* at 22:1-12). Dumenigo in turn approached his long-time family friend, Aristedes Perez ("Perez"), who agreed to lend the Debtor and

---

[1] A final judgment of divorce was entered on January 31, 2007. (Am. J. of Divorce, Jan. 31, 2007 (*Pl.'s Trial Br.*, Ex. 3)).

[2] The Debtor made an agreement with the Plaintiff that she would try to refinance her home in order to pay the counsel fees. (Def.'s Dep., 68:19-25).

Page 3
April 21, 2010

her sister $63,000. (Pl.'s Trial Br. 4). As security for the loan, Perez was given a mortgage on the Property, dated January 15, 2007.[3] (Mortgage to Perez, Jan. 15, 2007 (Pl.'s Trial Br., Ex. 6)).

Despite the loan from Perez, the Debtor, her sister, and Dumenigo were unable to remain current on mortgage payments and faced the possibility of foreclosure by July 2007.[4] (Def.'s Dep., 45:19-24). As a result, the Debtor and Dumenigo met with Perez and asked him to purchase and hold title to the Property until they could obtain the funds needed to pay off their loans. (Dep. of Aristedes Perez, 25:16-25, 26:1-12, Sept. 3, 2008 (Pl.'s Trial Br., Ex.11)). The Debtor understood that in paying the purchase price of the Property, Perez was actually paying off the existing mortgage. (Def.'s Dep., 44:15-25). The Debtor was also aware that through the arrangement, she was receiving the opportunity to stay and live at the Property while her son finished school. (*Id.* at 36:18-25, 44:15-25).

At the time of the transfer, the appraised value of the Property was $537,000; however, Perez purchased the Property for $300,000. (Pl.'s Trial Br. 5, 6; Appraisal, July 12, 2007 (Pl.'s Trial Br., Ex. 9)). The Plaintiff provided a copy of the HUD-1 settlement statement reflecting the transfer of the Property. At her deposition, the Debtor acknowledged the HUD-1 and recalled having signed it.[5] ((Def.'s Dep., 23:1-7, 41:15-25, 42:1-25).

Upon transferring the Property to Perez, the Debtor, Dumenigo, and Perez entered into a lease agreement, which required the Debtor and Dumenigo to pay $3,275 per month in rent to remain in possession of the Property.[6] (Pl.'s Trial Br. 5; Lease to Def., July 11, 2007 (Pl.'s Trial Br., Ex. 8)). The lease also contained a right of first refusal and an option to purchase the Property for $393,000.[7] (Lease to Def., July 11, 2007 (Pl.'s Trial Br., Ex. 8)). Until they were evicted from the Property in September of 2008, the Debtor and Dumenigo had paid only one or two months' rent. (Perez Dep., 31:4-10, 32:12-18).

---

[3] The Debtor made only one or two payments on this loan and thus approximately $60,000 remains outstanding. (Dep. of Aristedes Perez, 23:4-17, Sept. 3, 2008 (*Pl.'s Trial Br.*, Ex.11)).

[4] The documents provided to this Court by the Plaintiff are unclear when it comes to the mortgages on the Property. Based on the Debtor's deposition, it appears that the money initially loaned by Perez was used to pay off the mortgage under Luis Ramos's name. (Def.'s Dep., 62:19-25, 63:1-2, 64:17-23). Thereafter, it appears that Washington Mutual held a first mortgage on the Property. (*Id.* at 44:9-14, 45-18-24). It was the Debtor's inability to make payments under this mortgage that again led her to turn to Perez for help in July 2007.

[5] Although the deed is not set forth in the Plaintiff's exhibits, Perez stated in his deposition that a deed reflecting this transfer exists. (Perez Dep., 24:15-17). Perez also stated that the settlement statement provided to the Court accurately reflected this transaction. (*Id.* at 24:23-25; 25:1-5).

[6] This amount included interest on the amounts loaned to the Debtor and her fiancé. (Perez Dep., 31:14-18).

[7] The lease set forth in the exhibits is not signed by both parties, though Perez at his deposition stated that he signed the lease. (Perez Dep., 30:18-25, 31:1-10). The Debtor also acknowledged in her deposition that she was bound by the terms of the lease agreement. (Def.'s Dep., 51:2-13).

Page 4
April 21, 2010

On January 22, 2008, the Debtor filed for relief under chapter 7 of the Bankruptcy Code. Her bankruptcy petition, schedules, and statement of financial affairs (collectively, "Petition") did not reference: (1) the $63,000 loan received from Perez in January 2007; (2) the mortgage given to Perez in exchange for the loan; (3) the transfer of the Property to Perez for $300,000; or (4) the right of first refusal and option to purchase the Property under the lease agreement. (Pl.'s Trial Br., Ex. 1). When asked about these omissions at her deposition, the Debtor stated that: (1) she did not believe the Property was hers at the time of the transfer but rather that it was under Luis Ramos's name and (2) she excluded the right to repurchase the Property because she thought she "lost" it to Perez when he "bought the mortgage."[8] (Def.'s Dep., 37:7-12, 43:14-25-44:1-14, 60:9-24, 61:3-12).

## Discussion

A discharge under § 727 of the Bankruptcy Code is the primary tool used to afford debtors a fresh start. Congress has described the discharge as the "heart" of bankruptcy law's fresh start provisions. *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993); *see also* H.R. Rep. No. 595, 95th Cong. 1st Sess. 384 (1977). Courts will deny a discharge only in extreme circumstances and will construe the exceptions to discharge strictly against creditors and liberally in favor of debtors. *E.g. Ins. Co. of N. Am. v. Cohn (In re Cohn)*, 54 F.3d 1108, 1113 (3d Cir. 1995); *Stapleton v. Yanni (In re Yanni)*, 354 B.R. 708, 711 (Bankr. E.D. Pa. 2006) (stating that a denial of discharge is "by far the most severe penalty a Chapter 7 debtor can receive in the life of a bankruptcy case"). Still, the Bankruptcy Code is meant to discharge only the honest but unfortunate debtor. *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991); *see also Wachovia Bank, N.A. v. Spitko (In re Spitko)*, 357 B.R. 272, 298 (Bankr. E.D. Pa. 2006) (explaining that a discharge is "a privilege, not a right, and should only inure to the benefit of the honest debtor"). Accordingly, to receive a discharge, debtors must provide an accurate picture of their pre-petition financial affairs. *K&K Co., Inc. v. Conde (In re Conde)*, 386 B.R. 577, 582 (Bankr. W.D. Pa. 2008) (citing *State Bank of India v. Chalasani*, 92 F.3d 1300, 1309 (2d Cir. 1996)).

### I. Section 727(a)(2)(A) of the Bankruptcy Code

Section 727(a)(2)(A) of the Bankruptcy Code provides that a debtor will not be granted a discharge where

> the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate . . . has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed, property of the debtor, within one year before the date of the filing of the petition.

---

[8] In stating that he "bought the mortgage," the Debtor seems to be referring to the fact that Perez purchased the home, and in doing so, paid off the mortgage held by Washington Mutual.

Page 5
April 21, 2010

11 U.S.C. § 727(a)(2)(A) (2006). To prevail on a § 727(a)(2)(A) cause of action, a party must prove the following by a preponderance of the evidence: (1) a disposition of property, such as a transfer or concealment; (2) a subjective intent on the debtor's part to hinder, delay, or defraud one or more creditors or the bankruptcy trustee through that disposition; and (3) that *both* the disposition and subjective intent occurred within one year before the petition date. *E.g.*, *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993).

With respect to the intent requirement, because a debtor is unlikely to admit directly that his or her actions were motivated by fraud, intent may be inferred using circumstantial evidence or inferences drawn from a course of conduct. *E.g.*, *Spitko*, 357 B.R. at 301; *Office of the U.S. Tr. v. Zimmerman (In re Zimmerman)*, 320 B.R. 800, 806 (Bankr. M.D. Pa. 2005). Courts have also established "badges of fraud" that indicate fraudulent intent. Such "badges" include: (1) a gratuitous transfer of valuable property or the transfer of property for inadequate consideration; (2) a close relationship between a transferor and transferee; (3) a transfer in anticipation of a pending lawsuit; (4) a transferor/debtor who was insolvent or in poor financial condition at the time of the transfer; (5) the transfer of all or substantially all of a debtor's property; (6) a transfer that so completely depletes the debtor's assets that the creditor was hindered or delayed in recovering any part of a judgment; and (7) the retention of possession, benefit, or use of the property in question even though title exists in another entity. *E.g. Holber v. Jacobs (In re Jacobs)*, 381 B.R. 147, 164 (Bankr. E.D. Pa. 2008); *La Brioche, Inc. v. Ishkhanian (In re Ishkhanian)*, 210 B.R. 944, 952 (Bankr. E.D. Pa. 1997); *Randolph v. Somerville (In re Somerville)*, 73 B.R. 826, 834 (Bankr. E.D. Pa. 1987).

In the present case, the Plaintiff argues that the Debtor's transfer of her 60% interest in the Property within one year of the petition date constitutes a transfer intended to hinder, delay, or defraud creditors. This Court agrees. First, there exists a disposition of property as the Debtor transferred her interest in the Property to Perez. Second, several badges of fraud are present, indicating that the Debtor transferred the Property with an intent to hinder, delay, or defraud her creditors. The Property was transferred to Perez for inadequate consideration, as evidenced by the fact that the appraised value of the Property at the time of sale was $537,000, yet Perez purchased it for $300,000.

The badges of fraud are as follows: The Debtor's option to repurchase the Property for an amount far less than its fair market value also suggests that the sale to Perez was merely a means to protect the Property from the threat of creditors while the Debtor and Dumenigo tried to pay off their loans. The Debtor also retained possession, benefit, and use of the Property following the transfer by entering into a lease agreement that enabled her to remain in the home for $3,275 per month, an amount that was paid only once or twice during the one-year period that she lived in the house. Although the Debtor and Perez met in person only once, a close relationship existed between the parties as Perez was a long-time family friend of Dumenigo and it is this relationship that led Perez to assist the Debtor in the first place. The Debtor was in poor financial condition at the time of the transfer as her home was on the verge of foreclosure and she faced significant debts stemming from her divorce. Lastly and significantly, the Debtor expressly stated at her deposition that the purpose of the transfer was to enable her to remain in her home, which was in danger of foreclosure. Based on these factors, it is clear that

Page 6
April 21, 2010

the Debtor acted with an intent to hinder, delay, and defraud her creditors when she transferred the home to Perez.[9]

The final element required to assert an objection to discharge under § 727(a)(2)(A) provides that *both* the disposition and the debtor's subjective intent must occur within one year before the petition date. Here, both the transfer of the Property and the Debtor's intent to defraud her creditors took place in July 2007, which is within one year of the January 2008 petition date. Thus, because the elements required under § 727(a)(2)(A) are met, a denial of discharge is warranted.

## II.    Section 727(a)(3) of the Bankruptcy Code[10]

Section 727(a)(3) provides for a denial of discharge where:

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727(a)(3) (2006). The purpose of this section is to "give creditors and the bankruptcy court complete and accurate information concerning the status of the debtor's affairs and to test the completeness of the disclosure requisite to a discharge." *Meridian Bank. v. Alten*, 958 F.2d 1226, 1230 (3d Cir. 1992). "The statute also ensures that the trustee and creditors are supplied with dependable information on which they can rely in tracing a debtor's financial history." *Id.*

To set forth a claim for relief under § 727(a)(3), the party objecting to discharge must establish by a preponderance of the evidence that "(1) the debtor failed to maintain and preserve records and (2) such failure makes it impossible to ascertain the debtor's financial condition and material business transactions." *Id.* at 1230-31 (citing *In re Decker*, 595 F.2d 185, 187 (3d Cir. 1979)); *see also Serio v. DiLoreto (In re DiLoreto)*, 266 Fed. Appx. 140, 144-45 (3d Cir. 2008)

---

[9] The Debtor frequently claimed throughout her deposition that she did not believe the Property was hers at the time it was transferred to Perez, but rather that it was still under Luis Ramos's name. This Court declines to treat this assertion as negating the Debtor's fraudulent intent, particularly because, as described above, several badges of fraud exist, which indicate the Debtor's motives were improper. Moreover, it would be unreasonable for the Debtor to believe that the Property was still under Luis Ramos's name at the time of the transfer since, as her deposition testimony reveals, she understood that she and her sister received ownership interests in the Property following her divorce.

[10] Although § 727(a)(2)(A) provides a sufficient basis upon which to deny the Debtor a discharge in this matter, this Court will address the Plaintiff's additional arguments under §§ 727(a)(3) and (a)(4) of the Bankruptcy Code.

Case 08-01409-DHS    Doc 19    Filed 04/21/10    Entered 04/22/10 15:45:21    Desc Main
                           Document      Page 7 of 12


Page 7
April 21, 2010

(specifying that the standard to be applied to claims asserted under § 727(a)(3) is the preponderance of the evidence standard). If the party objecting to discharge satisfies these requirements, the burden shifts to the debtor to demonstrate that the deficiency is justified. *E.g. Wachovia Bank, N.A. v. Spitko (In re Spitko)*, 357 B.R. 272, 306 (Bankr. E.D. Pa. 2006) (citing *Meridian Bank*, 958 F.2d at 1233). Whether a deficiency is justified in turn "depends largely on what a normal, reasonable person would do under similar circumstances." *Meridian Bank*, 958 F.2d at 1231. This inquiry is made on a "case-by-case basis" and includes such considerations as "the education, experience, and sophistication of the debtor; the volume of the debtor's business; the complexity of the debtor's business; the amount of credit extended to debtor in his business; and any other circumstances that should be considered in the interest of justice." *Id.*

A debtor who is a sophisticated business person or engaged in numerous business transactions will be held to a greater degree of accountability under § 727(a)(3). *See id.* at 1231 (finding that debtor was sophisticated because he was an experienced attorney who "knew the value of maintaining adequate records"); *K&K Co., Inc. v. Conde (In re Conde)*, 386 B.R. 577, 582 (Bankr. W.D. Pa. 2008) (finding debtor to be sophisticated where he attended college, was a certified machine tool sales engineer, and was involved in designing automated manufacturing processes). However, the records that a debtor must keep for purposes of the statutory section "need not be impeccable." *Conde*, 386 B.R. at 582. On the contrary, "such records need only adequately identify a debtor's pre-petition financial dealings so as to make possible [an] intelligent inquiry concerning the transactions." *Id.* at 582-83 (denying discharge under § 727(a)(3) where debtors "produced nothing from which one might be able to reconstruct their pre-petition financial condition and business transactions" and "failed to produce anything at trial that might explain or justify their failure to do so").

Here, the Plaintiff argues in part that a denial of discharge is warranted under § 727(a)(3) because the Debtor omitted assets and liabilities from her Petition, such as the sale of the Property to Perez. This Court finds that such an omission of assets from one's Petition is more appropriately addressed under § 727(a)(4) of the Bankruptcy Code, and will therefore be addressed in the next section.

The Plaintiff also argues that the Debtor's failure to keep or preserve "recorded information" pertaining to the transfer of the Property to Perez justifies a denial of discharge under § 727(a)(3) since this information would have revealed an accurate portrayal of the Debtor's finances. It is certainly the case that the Debtor did not provide the Plaintiff with *all* documents pertaining to the transfer of the Property. However, the Plaintiff did obtain other documents, such as the HUD-1 settlement statement and the lease agreement, both of which were sufficient to identify the Debtor's pre-petition actions concerning the Property. These records made possible an "intelligent inquiry" concerning the transfer even though they were not "impeccable."

Additionally, this Court will not hold the Debtor to a higher standard of accountability for record keeping since the Debtor does not appear to be a sophisticated debtor. The Debtor has not

Page 8
April 21, 2010

engaged in numerous business transactions, and unlike the debtors in *Meridian* and *Conde*, she does not appear to have any employment experience or technical expertise that would instill an understanding of the need for and importance of record keeping. Accordingly, this Court finds that § 727(a)(3) is not a basis for denying discharge in the present case.

### III.    Section 727(a)(4)(A) of the Bankruptcy Code

Under § 727(a)(4)(A) of the Bankruptcy Code, a debtor will not receive a bankruptcy discharge if she "knowingly and fraudulently, in or in connection with the case, made a false oath or account." 11 U.S.C. § 727(a)(4)(A) (2006). The purpose of this section is to encourage debtors to completely and candidly disclose their assets, income, expenses, and liabilities so that creditors have adequate information about the debtor's estate. *Spitko*, 357 B.R. at 312 (citing *In re Kearns*, 149 B.R. 189, 190 (Bankr. D. Kan. 1992)).

To deny a discharge under § 727(a)(4)(A), a party must prove by a preponderance of the evidence that: (1) the defendant made a statement under oath; (2) the statement was false; (3) the defendant knew the statement was false; (4) the defendant made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *E.g.*, *Spitko*, 357 B.R. at 312; *Scimeca v. Umanoff*, 169 B.R. 536, 541 (D.N.J. 1993).

#### (A) The Debtor's Statements were under Oath

Federal Rule of Bankruptcy Procedure 1008 provides that "[a]ll petitions, lists, schedules, statements, and amendments thereto shall be verified or contain an unsworn declaration as provided in 28 U.S.C. § 1746."[11] Fed. R. Bankr. P. 1008. An "oath" under § 727(a)(4)(A) of the Bankruptcy Code, therefore, includes the unsworn declarations contained in the Petition. *See Scimeca*, 169 B.R. at 542; *Moore v. Strickland (In re Strickland)*, 350 B.R. 158, 163 (Bankr. D. Del. 2006); *Spyra v. Finney (In re Finney)*, 333 B.R. 242, 250 (Bankr. W.D. Pa. 2005). Statements made when one is testifying at a proceeding such as a § 341 meeting or when being deposed are also under oath. *See* Fed. R Civ. P. 30(b)(5)(A) (requiring that depositions begin with an on-the-record statement that includes the administration of an oath or affirmation to a deponent); *Office of the U.S. Tr. v. Zimmerman (In re Zimmerman)*, 320 B.R. 800, 807 (Bankr. M.D. Pa. 2005) (stating that debtor was under oath when he testified at the § 341 meeting).

In the present case, there can be no dispute that the statements made by the Debtor in her Petition and at her deposition were under oath. Accordingly, the first element required to deny a discharge under § 727(a)(4)(A) is met.

---

[11] Section 1746 of the United States Code states that "unsworn declarations are equivalent to a verification under oath if the declarant states in writing that the information is true under penalty of perjury." 28 U.S.C. § 1746 (2006).

Page 9
April 21, 2010

### (B) The Debtor's Statements were False

To deny a discharge under § 727(a)(4)(A), a plaintiff must establish that statements made by a debtor under oath were false. A "false oath" includes: (1) false statements or omissions in a debtor's Petition and (2) false statements by a debtor at examinations held during the course of the bankruptcy proceedings. *E.g.*, *Scimeca*, 169 B.R. at 542-43 (holding that debtor's failure to list his interest in a business on his Petition when in fact he was the company's sole stockholder and chief executive constituted a false oath)*; Strickland*, 350 B.R. at 163 (explaining that a debtor's failure to list all assets owned can constitute a false oath or account); *Continental Bank v. Bobroff (Matter of Bobroff)*, 69 B.R. 295, 298 (E.D. Pa. 1987) (stating that § 727(a)(4)(A) has been applied to verbal false oaths).

Here, the Debtor failed to disclose several assets and liabilities in her Petition, including: (1) her receipt of a loan in the amount of $63,000 from Perez; (2) the mortgage conveyed to Perez in exchange for the loan; (3) the transfer of the Property to Perez for $300,000; (4) the lease agreement enabling the Debtor to remain in the Property; and (5) the Debtor's right of first refusal and option to repurchase the Property under the lease agreement. These omissions equate to "false oaths" since, in failing to disclose them, the Debtor misrepresented the nature of her estate to creditors. Thus, the second element required to deny a discharge under § 727(a)(4)(A) is met.

### (C) The Debtor's False Oaths were Made Knowingly and with Fraudulent Intent[12]

Omissions or false statements caused by an honest mistake or inadvertence are not sufficient to deny a discharge. *Spitko*, 357 B.R. at 312 (citing *Georges v. Solodky (In re Georges)*, 138 Fed. Appx. 471, 471 (3d Cir. 2005)). Rather, a debtor will be denied a discharge under § 727(a)(4)(A) only when his or her false oath was made knowingly and with fraudulent intent. A false oath is made "knowingly" where the statement is (1) known by the debtor to be false, (2) made without belief in its truth, or (3) made with reckless disregard for the truth. *Id.* at 313.

Courts have found several factors to be significant in finding that a debtor acted with reckless disregard for the truth and thus "knowingly" for purposes of § 727(a)(4)(A), specifically, (1) the fact that the events for which the petition questions elicited information took place prior to the petition date, (2) the omission of numerous assets from a debtor's petition, (3) the existence of "wild disparities" between the petition and the debtor's testimony at a § 341 meeting or other examination, and (4) the debtor's failure to offer an explanation for his or her omissions. *See, e.g.*, *Office of the U.S. Tr. v. Zimmerman (In re Zimmerman)*, 320 B.R. 800, 810 (Bankr. M.D. Pa. 2005) (finding recklessness where there were disparities between the debtor's schedules and § 341 meeting

---

[12] While the issues of whether a debtor's false oaths were made knowingly and with fraudulent intent are two separate considerations under § 727(a)(4)(A), much of the analysis regarding a debtor's knowing false oath applies "with equal validity" to the issue of fraudulent intent. *See Dolata v. Dolata (In re Dolata)*, 306 B.R. 97, 155 (Bankr. W.D. Pa. 2004). Thus, the factors are combined for purposes of this analysis.

Page 10
April 21, 2010

testimony, several assets were omitted from the debtor's petition, and the debtor failed to explain why the omitted assets were not included in his amended petition); *Dolata v. Dolata (In re Dolata)*, 306 B.R. 97, 152-53 (Bankr. W.D. Pa. 2004) (finding that the debtor acted knowingly where the events in question occurred shortly before he filed his petition and thus he could not have forgotten to include them); *Randolph v. Somerville (In re Somerville)*, 73 B.R. 826, 832, 836 (Bankr. E.D. Pa. 1987) (noting the debtor's failure to provide an explanation for his omissions in denying a discharge under § 727(a)(4)(A)).

In establishing that a debtor acted with fraudulent intent, courts may look to circumstantial evidence and draw inferences from a course of conduct. *Scimeca v. Umanoff*, 169 B.R. 536, 542-43 (D.N.J. 1993). This is because a debtor is unlikely to admit directly that his or her intent was improper. *Id.* Moreover, as is the case in showing that a debtor acted "knowingly," "[t]he requisite degree of fraudulent intent is shown if the debtor engaged in behavior which displayed a reckless and cavalier disregard for the truth." *Zimmerman*, 320 B.R. at 810-11 (citing *In re Dolata*, 306 B.R. at 149); *see also Continental Bank v. Bobroff (Matter of Bobroff)*, 69 B.R. 295, 298 (E.D. Pa. 1987) (finding recklessness where debtor failed to disclose his interest in certain assets and made contradicting statements concerning his ownership of an asset at a Rule 205(a) hearing and at trial). Recklessness can in turn be inferred where there is a "series or pattern of errors or omissions" on a debtor's petition. *Spitko*, 357 B.R. at 318; *see also The Cadle Co. v. Zofko (In re Zofko)*, 382 B.R. 45, 48 (Bankr. W.D. Pa. 2008) ("Multiple inaccuracies or falsehoods may rise to the level of reckless indifference to the truth, which is the functional equivalent of intent to deceive.").

In the present case, it is clear that the Debtor was at least reckless when she made false oaths in her Petition. In January 2007, the Debtor and her fiancé received the $63,000 loan from Perez and gave him a mortgage to secure the loan. Her transfer of the Property to Perez and subsequent lease agreement took place in July 2007. Notably, both of these events occurred at a time when the Debtor had incurred significant counsel fees stemming from her divorce and was faced with the possibility of foreclosure.[13] However, none of those assets, liabilities, or transfers were reflected on the Debtor's Petition.

Next, the fact that there was a "series" of omissions in the Debtor's Petition demonstrates a reluctance to be forthcoming about her assets and liabilities. As stated above, several items were omitted from the Petition, such as the money loaned by Perez, the transfer of the Property to Perez, and the right of first refusal and option to repurchase set forth in the lease agreement. These

---

[13]It is worth noting that because the Debtor was aware of these assets at the time of filing, her declaration that her Petition was accurate can also be considered a knowing false oath under § 727(a)(4)(A). *See Randolph v. Somerville (In re Somerville)*, 73 B.R. 826, 835 (Bankr. E.D. Pa. 1987) (stating that a debtor's sworn affirmation of the truthfulness and accuracy of his Petition "could form the basis of false statements upon which discharge could be denied"); *Dolata*, 306 B.R. at 155 (noting that because debtor failed to include omitted assets in her amended petition when she had knowledge of the assets, the declaration on her petition constituted a knowing false oath).

Case 08-01409-DHS    Doc 19    Filed 04/21/10    Entered 04/22/10 15:45:21    Desc Main
                            Document      Page 11 of 12

Page 11
April 21, 2010

omissions suggest, at a minimum, that the Debtor was reckless in accurately reporting her financial dealings in her Petition.

Lastly, as in *Zimmerman*, the Debtor has not offered a sufficient explanation for her omissions and false statements. When asked at her deposition about her failure to disclose the transfer of the Property to Perez, the Debtor claimed that she did not believe the Property was hers at that time because: (1) she believed it was still under Luis Ramos's name and (2) she thought she "lost" it to Perez when he "bought the mortgage." As explained earlier, the Debtor could not have reasonably believed that the Property was under Luis Ramos's name since her deposition reveals that she received an ownership interest from him after her divorce. Moreover, her explanations do not account for her failure to disclose the $63,000 loan from Perez, the mortgage conveyed to Perez in exchange for the loan, the purchase price paid for the Property, or the rights afforded to the Debtor under the lease agreement. Accordingly, this Court finds that the Debtor acted with a reckless indifference to the truth when she failed to disclose assets and liabilities on her Petition and in her deposition testimony. Because reckless indifference is sufficient to establish that the Debtor acted knowingly and with fraudulent intent, the third and fourth elements required for a denial of discharge under § 727(a)(4)(A) are met.

### (D) The Debtor's Statements and Omissions are Material to this Bankruptcy Case

A denial of discharge under § 727(a)(4)(A) requires that a false oath be material to the administration of the bankruptcy case. That creditors are harmed by an omission or false statement is not critical in determining whether a false oath is material. *E.g. Scimeca v. Umanoff*, 169 B.R. 536, 543 (D.N.J. 1993). Rather, "the subject matter of a false oath is 'material' and thus sufficient to bar discharge if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of [the bankrupt's] property." *E.g.*, *Spitko*, 357 B.R. at 312 (citing *In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984)); *see also Scimeca*, 169 B.R. at 543 (D.N.J. 1993) (finding that debtor's failure to disclose his ownership interests in two businesses was material because the omission "prevent[ed] creditors from having an opportunity to investigate the debtor's financial condition and prevent[ed] the trustee from evaluating avoidable transfers"); *Zimmerman*, 320 B.R. at 808 ("[T]here is little that will prove to be immaterial for purposes of required disclosure if it aids in understanding the debtor's financial affairs and transactions." (citing *In re Coombs*, 193 B.R. 557, 567 (Bankr. S.D. Cal. 1996))).

"Matters so trivial in nature as to have but little effect upon the estate and upon creditors have been treated as immaterial." *Randolph v. Somerville (In re Somerville)*, 73 B.R. 826, 835 (Bankr. E.D. Pa. 1987) (citing *In re Woerner*, 66 B.R. 964, 972 (Bankr. E.D. Pa. 1986)); *see also The Cadle Co. v. Zofko (In re Zofko)*, 382 B.R. 45, 49 (Bankr. W.D. Pa. 2008) (finding omissions immaterial where they related to items of trivial value and accurate answers were located elsewhere on petition). However, claims that undisclosed assets are of little or no value, or that one has no equity in undisclosed assets, will *not* excuse a debtor's omissions as immaterial. *See Spitko*, 357 B.R. at 312-13; *Moore v. Strickland (In re Strickland)*, 350 B.R. 158, 164 (Bankr. D. Del. 2006)

Page 12
April 21, 2010

(noting value of debtor's undisclosed business but finding that "even if the [b]usiness had nominal value," it was material because it related to the debtor's business dealings); *Scimeca*, 169 B.R. at 545 (citing *In re Acuri*, 116 B.R. 873, 881 (Bankr. S.D.N.Y. 1990) (stating that even assets of "seemingly worthless value" may be material to a bankruptcy case).

Furthermore, it is not for a debtor to determine what is worth being disclosed and what is not. Creditors "are entitled to judge for themselves from a true account of the facts, what will benefit and what will prejudice them." *Legum v. Murray (In re Murray)* 249 B.R. 223, 230 (Bankr. E.D.N.Y. 2000) (quoting *Morris Plan Ind. Bank v. Finn*, 149 F.2d 591, 592 (2d Cir. 1945)).

In the present case, the subject matter of the Debtor's omissions related to both the discovery of assets and the disposition of the Debtor's property. Certainly, creditors would be interested to know that the Debtor received a loan in the amount of $63,000 in 2007, that she gave Perez a mortgage in return, and that she received $300,000 for the sale of her home. It is also noteworthy that the Debtor retained interests in the Property following the transfer, including the option to repurchase the Property for less than fair market value. Regardless of the value of these assets and liabilities, excluding them from the Petition hindered creditors in investigating and fully understanding the Debtor's financial condition and her previous business dealings. Therefore, the Debtor's omissions are material to the course of this bankruptcy proceeding.

## **Conclusion**

Having found that the elements required for a denial of discharge under § 727(a)(4)(A) are met, the Debtor's discharge is hereby denied. An Order in conformance with this Opinion has been entered by the Court and a copy is attached.

Very truly yours,

*/s/ Donald H. Steckroth*

DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Enclosure